# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES E. FORD, # R-43353,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 17-cv-484-NJR |
| ) | |
| **ROBERT MUELLER,** ) | |
| **CHRISTOPHER C. BAILEY,** ) | |
| **JUSTIN R. BILLINGTON,** ) | |
| **and UNKNOWN OFFICERS** ) | |
| **(All Internal Affairs Officers),** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Centralia Correctional Center ("Centralia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that he was wrongly subjected to discipline based on alleged gang membership and that he was singled out for a ticket because of his race. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Also before the Court is Plaintiff's motion for leave to file an amended Complaint (Doc. 8).

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

1

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

### **The Complaint**

On May 10, 2016, Plaintiff was on the yard talking to his cousin (also an inmate) about family matters. (Doc. 1, p. 6). Three other inmates were standing about two feet away. C/O Bailey walked up to the other three inmates and asked to see their ID cards, then called Plaintiff and his cousin over to check their ID's as well. They complied. Bailey then told them, "He didn't

know why but [they] should move around." (Doc. 1, p. 6).

The next day, Plaintiff was called to the "gang intel office" and questioned about whether he was a member of the Gangster Disciples. *Id.* Plaintiff responded that he was not and had never been in a gang.

On May 12, 2016, however, Plaintiff received a disciplinary ticket claiming he was a member of the Gangster Disciples. (Doc. 1-2, p. 2). Although Plaintiff asserts there is no evidence of gang activity in his background, he was found guilty of the offense. (Doc. 1-2, pp. 5-6). He was punished with the loss of two months telephone privileges, two months of outside recreation, and six months of visit restrictions. Because Plaintiff has now been labeled as a gang member, other gang member inmates have been questioning him. He is concerned that this label will affect him upon his release.

Plaintiff alleges that Bailey singled out Plaintiff and the other four nearby inmates for disciplinary action because of their race (African-American). Bailey has walked past "numerous" groups of whites and Hispanics gathered on the yard, in order to get to a group of Blacks. (Doc. 1, p. 6).

Plaintiff complained about the charge and discipline to Warden Mueller, who said he would "look into it," but Plaintiff claims Mueller never did. (Doc. 1, p. 6). Plaintiff filed a grievance (Doc. 1-2, pp. 3-4, 8, 13-15),[1] talked to the administration, and had his family call about the matter. He was told to "let the administration look into it," which Plaintiff did, but nothing was done. *Id.*

About three months after the incident, C/O Bailey came to Plaintiff's cell for a compliance check. Bailey poured all the water out of Plaintiff's hot pot, then plugged it in and

---

[1] As a result of Plaintiff's grievance, one violation (404 – violation of rules for five or more inmates grouped together) was deleted, but the violation for 205 – gang or unauthorized organization activity, was unchanged. (Doc. 1-2, pp. 13-15).

3

left it that way. When Plaintiff said something about this conduct, Bailey ordered him out of the cell. When Plaintiff returned, Bailey had confiscated a number of personal items, including a Sony Walkman, 24 tapes, and various dishes and toiletry items. Plaintiff wrote grievances about Bailey's "harassment" and "abuse of power." (Doc. 1, p. 6; Doc. 1-1, pp. 3-4, 8-9). Since then, Bailey has not been assigned to Plaintiff's housing unit, but when Bailey sees Plaintiff, he stops Plaintiff and searches him to continue the harassment.

Plaintiff seeks a declaratory judgment, an order clearing the disciplinary charges from his record, and compensatory and punitive damages. (Doc. 1, p. 9).

## **Motion for Leave to File Amended Complaint (Doc. 8)**

In this motion, Plaintiff seeks permission to "file an Amended Complaint adding a party." (Doc. 8, p. 1). He explains that in the "bogus adjustment committee hearing," C/O Mark Burton sided with staff and ignored prison rules, thus violating Plaintiff's rights. *Id.* Plaintiff wants to include Burton as a defendant. Along with the motion, Plaintiff tendered a two page proposed Amended Complaint. This document consists only of the first page of a complaint form, including the caption naming Burton along with the other defendants, and a second page listing all the defendants, including Burton. The proposed Amended Complaint does not contain a statement of claim, signature, or any other components.

A plaintiff cannot amend a previous Complaint in a piecemeal fashion, as Plaintiff attempts to do here. Consistent with Federal Rule of Civil Procedure 8(a), a cut-and-paste amendment like this (known as amendment by interlineation) is not permitted; instead, all claims against all defendants must be set forth in a single document. Furthermore, an amended complaint supersedes and replaces the original Complaint, rendering the original Complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). For

this reason, an amended complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading.

Accordingly, Plaintiff's motion (Doc. 8) shall be denied, but without prejudice to seeking leave at a later date. The Court will proceed to review the original Complaint, as required under Section 1915A.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Fourteenth Amendment claim for deprivation of a liberty interest without due process, for punishing Plaintiff for allegedly belonging to a gang when he is not a gang member (disciplinary ticket of May 10, 2016);

**Count 2:** First Amendment equal protection claim against Bailey, for singling out Plaintiff for disciplinary action on May 10, 2016, because of his race;

**Count 3:** First Amendment retaliation claim against Bailey, for destroying and confiscating Plaintiff's property in August 2016 after Plaintiff filed a grievance against Bailey over the May 10, 2016, incident.

As explained below, Count 1 shall be dismissed for failure to state a claim upon which relief may be granted. Counts 2 and 3 shall proceed for further review in this action.

**Dismissal of Count 1 – Deprivation of a Liberty Interest Without Due Process**

Allegations of false disciplinary reports do not state a claim where the prisoner is afforded due process on the allegedly false charge. *Hanrahan v. Lane*, 747 F.2d 1137, 1140

5

(7th Cir. 1984). The Seventh Circuit Court of Appeals has reasoned that the due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural protections that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to a disciplinary segregation, or otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-572.

> *Wolff* required that inmates facing disciplinary charges for misconduct be accorded [1] 24 hours' advance written notice of the charges against them; [2] a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; [3] the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex; [4] an impartial tribunal; and [5] a written statement of reasons relied on by the tribunal. 418 U.S. at 563-572.

*Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983). The Supreme Court has also held that due process requires that the findings of the disciplinary tribunal must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Even a meager amount of supporting evidence, such as the testimony or statement of the reporting prison official, is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

In Plaintiff's case, he does not point to any irregularity in the conduct of his disciplinary hearing which might have deprived him of one of the protections set forth in *Wolff*. His claim that he was never involved in any gang is essentially an attack on the sufficiency of the evidence against him. But where, as here, the tribunal had *some* evidence supporting the finding of guilt, a constitutional claim will not be sustained.

Additionally, even if Plaintiff had demonstrated that he was denied one of the procedural protections outlined above, the punishment he received did not amount to a deprivation of a liberty interest. When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Here, Plaintiff fails to do so, because he only lost telephone, visitation, and out-of-cell recreation privileges. While this punishment no doubt caused Plaintiff some distress, inmates do not have a constitutionally protected liberty interest in these privileges. A prison has the discretion to keep its inmates "in a range of custodial conditions without infringing upon a prisoner's liberty or property interests." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). This is because imprisonment necessarily involves the "limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948).

The Constitution does not recognize an inmate's liberty interest in telephone privileges. *See Sandin v. Connor,* 515 U.S. 472 (1995). Even regulations that limit telephone use by inmates on an ongoing basis have been sustained routinely as reasonable. *See, e.g., Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001); *Pope v. Hightower*, 101 F.3d 1382, 1384-85 (11th Cir. 1996); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1988). Moreover, in this case, Plaintiff was not completely barred from communicating with his family. He could have written to them during the two months his phone privileges were suspended.

As to the two month suspension of Plaintiff's outside recreation privileges, an inmate has no liberty interest in movement outside of his cell. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430

(7th Cir. 1996). Only if a restriction has deprived an inmate of the ability to engage in physical activity to the point his health has been affected, would such a deprivation amount to a potential constitutional claim, under the Eighth Amendment. *See Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened"). The Complaint does not indicate that Plaintiff suffered any detriment to his health from the temporary loss of recreation privileges. And again, no liberty interest is implicated by that sanction.

Similarly, the six month suspension of visitation privileges does not implicate a constitutional liberty interest. Prisoners do not have a fundamental right to visitation arising directly from the Constitution. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989). Further, the Supreme Court has observed that withdrawal of visitation privileges for a limited period of time as a disciplinary measure "is not a dramatic departure from accepted standards for conditions of confinement." *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)).

Based on the above authority, Plaintiff fails to state a claim upon which relief may be granted for deprivation of a liberty interest without due process in **Count 1.** This claim shall therefore be dismissed.

### Count 2 – Equal Protection

Plaintiff further claims that Bailey targeted him, his cousin, and the three other nearby African-American inmates for disciplinary action based on their race. He asserts that several other times, Bailey had ignored and passed by groups of white inmates and Hispanic inmates who were gathered on the yard, only to approach a group of Black inmates for a suspected rule infraction. (Doc. 1, p. 6).

Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To state an equal protection claim, a plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *Id.*

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

Purposeful and intentional discrimination is exactly what Plaintiff is alleging here with respect to Bailey's alleged targeting of African-American inmates for discipline. At this early stage of the case, Plaintiff may proceed with his equal protection claim against Bailey in **Count 2**.

### Count 3 – Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The plaintiff must have engaged in some protected First Amendment activity, experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

In this case, Plaintiff explains that he filed a grievance against Bailey after the disciplinary incident of May 10, 2016. Then three months later, Bailey gratuitously damaged Plaintiff's hot pot while searching Plaintiff's cell, as well as confiscated a number of Plaintiff's personal items. This chronology, at the pleading stage, supports a claim for retaliation against Bailey. Plaintiff may thus proceed with the claim in **Count 3**.

### Dismissal of Defendants Mueller, Billington, and Unknown Officers

Plaintiff's only allegation against Warden Mueller in the Complaint is that he failed to look into the disciplinary matter that is the subject of Count 1. (Doc. 1, p. 6). Because Count 1 shall be dismissed for failure to state a claim upon which relief may be granted, no viable claim remains against Mueller. The Complaint does not set forth any basis for including Mueller in the claims under Counts 2 and 3.

Plaintiff makes no factual allegations whatsoever against Internal Affairs Officer Billington or the Unknown Internal Affairs Officers. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant

in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

For these reasons, Mueller, Billington, and the Unknown Officers (All Internal Affairs Officers) will be dismissed from this action without prejudice.

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on the Defendant who remains in the action. No service shall be made on the dismissed Defendants.

Plaintiff's motion for leave to file amended complaint (Doc. 8) is **DENIED** without prejudice, for the reasons explained above.

### Disposition

**COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **MUELLER, BILLINGTON,** and the **UNKNOWN OFFICERS (All Internal Affairs Officers)** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for **BAILEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date

the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 22, 2017**

_____
**NANCY J. ROSENSTENGEL
United States District Judge**